| | | |
|---|---|---|
| ELIOT S. SASH, | : | CIVIL ACTION NO. **1:CV-08-1553** |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

**I. Background**.

On March 14, 2007, Plaintiff, Eliot S. Sash, formerly an inmate at the Federal Low Security Correctional Institution at Allenwood ("LSCI-Allenwood"), White Deer, Pennsylvania,[1] filed, *pro se,* a civil rights action, Civil No. 07-475, M.D. Pa. Plaintiff's Civil No. 07-475 case was found by the District Court to have been brought pursuant to 28 U.S.C. § 1331. Plaintiff was permitted to proceed with respect to his § 1331 action only as against Defendants Brady, Potope and Factora, and only with respect to his Eighth Amendment denial of proper medical care claims and his requests for injunctive relief. (*See* April 25, 2007 District Court Order, Doc. 18).

On October 1, 2007, Plaintiff filed a Motion to Amend his case No. 07-475 Complaint. (Doc. 70). On March 5, 2008, this Court issued a Memorandum and Order, and granted Plaintiff's Motion to Amend his Complaint. (Doc. 79).

---

[1]Plaintiff has been released from federal prison and he now resides with his wife in Cloister, New Jersey. Civil No. 07-475, Doc. 22, p. 2, n. 2. Civil No. 08-1553, Doc. 1, pp. 31-32. Plaintiff indicated that he was transferred from LSCI-Allenwood to a BOP Halfway House on October 2, 2007.

Plaintiff filed his Amended Complaint in case #07-475 on March 24, 2008. (Doc. 80). Plaintiff named as Defendants in his stated Amended Complaint the United States of America, James Potope, Assistant Health Services Administrator at the Low Security Correctional Institution, Allenwood, Dr. James Brady, Clinical Director of the Low Security Correctional Institution, Allenwood, and Vicarthur Factora, Physician's Assistant at the Low Security Correctional Institution, Allenwood. (Doc. 80, p. 1). In his amended pleading filed in Civil No. 07-475, Plaintiff asserted an FTCA claim against the United States and Eighth Amendment denial of proper medical care claims against the stated three individual Defendants. (Doc. 82, p. 6).

On March 26, 2008, we issued a Report and Recommendation wherein we recommended that Plaintiff's state law claims asserted in his case No. 07-475 Amended Complaint, namely for negligence, malpractice and infliction of emotional distress, against Defendants Brady, Potope and Factora be dismissed. (Doc. 82). On May 13, 2008, the District Court issued an Order adopting our Report and Recommendation and remanding the matter to the undersigned for further proceedings. (Doc. 83).

On May 14, 2008, in case No. 07-0475, we issued an Order directing the Clerk of Court to serve Plaintiff's Amended Complaint upon the remaining Defendants. (Doc. 84). Summons was issued as to Defendants Potope, Brady, and Factora on that date.

On June 9, 2008, Defendants Potope, Brady and Factora filed a Motion to Dismiss the Amended Complaint and a Motion for Summary Judgment in case No. 07-475 . (Doc. 85). On August 5, 2008, Plaintiff filed a Motion to Dismiss the United States of America, without prejudice, as a Defendant in case No. 07-475. (Doc. 99). Plaintiff obtained the concurrence of counsel for

2

Defendants in said Motion. (Doc. 99, pp. 2-3). The basis of Plaintiff's Motion to Dismiss Defendant United States of America was his contention that this Court lacked subject matter jurisdiction over the negligence claims made against this Defendant in his case #07-475 Amended Complaint. (Doc. 99, p. 1).[2]

On August 12, 2008, in light of the concurrence of counsel for Defendant United States of America in Plaintiff's Motion to Dismiss, we issued an R&R and recommended that Plaintiff's Motion to Dismiss Defendant United States of America from case #07-475, without prejudice (Doc. 99), be granted. The District Court adopted our R&R and dismissed the United States as a Defendant from case #07-475 without prejudice to Plaintiff to file his FTCA action against the Untied States in a new case.[3]

---

[2]In their Brief in support of their dispositive Motion in case No. 07-475, Defendants argued that Plaintiff's FTCA claim against the United States should be dismissed because Plaintiff did not complete the administrative tort process with regard to his claim that he was treated negligently for his back condition, and because he did not timely file a Certificate of Merit pursuant to Pa.R.C.P. 1042.3(a)(1). (Doc. 90, p. 1).

As we noted in case No. 07-475, it is well settled that Plaintiff must exhaust his administrative remedies by filing a tort claim with the Bureau of Prisons regarding his claims for negligence under the FTCA, and failure to exhaust the administrative tort process bars the District Court from considering Plaintiff's negligence claims on their merits. *See Banks v. Roberts*,2007 WL 3096585, * 2 (3d Cir. 2007) (Non-Precedential); 28 U.S.C. § 2675(a).

[3]In case No. 07-475, we recommended in November 2008 that Defendants' Summary Judgment Motion (Doc. 85) be granted with respect to Plaintiff's remaining Eighth Amendment claims, and that Judgment be entered in favor of Defendants Potope, Brady and Factora, and against Plaintiff Sash. We found merit to Defendants' argument that the evidence demonstrated they did not violate the Eighth Amendment with respect to the medical care Plaintiff received for his serious back conditions. On February 2, 2009, the District Court adopted our R&R in case No. 07-475 and granted Defendants' Summary Judgment Motion. (Doc. 109).

Consequently, Plaintiff filed a new and separate FTCA action against the United States on August 19, 2008, which was docketed to the above captioned case. (Doc. 1, #08-1553).[4] As Defendant United States ("U.S.") recognizes (Doc. 13, p. 2), Plaintiff's Complaint (Doc. 1, p. 30) properly had a Certificate of Merit ("COM") pursuant to Pa. R. Civ. P. 1042.3. *See Santee v. U.S.*, Civil Action No. 3:CV-07-2207, September 30, 2008 Memorandum and Order (M.D. Pa.) (COM is required for a Pennsylvania professional negligence claim raised against United States by inmate in an FTCA action).[5]

The Court granted Plaintiff's *in forma pauperis* Motion and directed service of the Summons and Complaint upon Defendant U.S. After being granted an extension of time, Defendant filed a Motion to Dismiss and for Summary Judgment on December 24, 2008. **(Doc. 11).** On January 12, 2009, Defendant flied its Statement of Material Facts ("SMF") and support Brief, along with voluminous exhibits. (Docs. 13-15). Plaintiff filed his opposition Brief and his response to Defendant's SMF on April 1, 2009. (Docs. 19 and 20). Plaintiff filed his own exhibits, Exs. 1-16. (Doc. 21). Defendant filed its Reply Brief on April 14, 2009. (Doc. 22).

Defendant's dispositive Motion **(Doc. 11)** is ripe for disposition.[6]

This Court has jurisdiction over Plaintiff's FTCA claim against the United States pursuant to 28 U.S.C. § 1346 and § 2680. *See Banks v. Roberts*, 2007 WL 3096585, *2 (3d Cir.)(Non-

---

[4]We note that all further docket entries refer to case #08-1553.

[5]*See* 2008 WL 4426060 (M.D. Pa.).

[6]The undersigned was assigned this case for pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

Precedential); *Thomas v. U.S.*, 558 F. Supp. 2d 553, 554 (M.D. Pa. 2008).

## II. Motion for Summary Judgment Standard.

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Moreover, the Third Circuit has recently indicated that "although the party opposing summary judgment is entitled to 'the benefit of all factual inferences in the court's consideration of a motion for summary judgment, the nonmoving party must point to some evidence in the record that creates a genuine issue of material fact,' and 'cannot rest solely on assertions made in the pleadings, legal memorandum or oral argument.'" *Goode v. Nash*, 2007 WL 2068365 (3d Cir. 2007)(Non-Precedential)(citation omitted). Further, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion fo summary judgment; the requirement is that there be no genuine issue of material fact." *Freeman v. Bronkoski*, 2008 WL 4414725, *3 (M.D. Pa.)(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 247-48).

In *Smith v. Kyler*, 2008 WL 474252, *3 (M.D. Pa.), the Court stated:

> "Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. *Versarge v. Township of Clinton*, 984 F.2d 1359, 1370 (3d Cir. 1993). Allegations made without any evidentiary support may be disregarded. *Jones v. UPS*, 214 F.3d 402, 407 (3d Cir. 2000). The court may not consider evidence on a motion for summary judgment that would not be admissible at trial. *Pamintuan v. Nanticoke Mem'l Hosp.*, 192 F.3d 378, 387 n. 13 (3d Cir. 1999). Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita*, 475 U.S. at 5887 (citations omitted)."

## III. Material Facts.

Defendants have filed their in-depth 27-page, 207-paragraph SMF in support of their Summary Judgment Motion (Doc. 14, ¶'s 1.-207.), and all of their facts are properly supported by citation to evidence. (Doc. 15). We shall adopt as our own all of Defendants' facts contained in

their SMF that are supported by citation to evidence and that are not properly disputed by Plaintiff in his response to Defendants' SMF. (Doc. 20). To the extent that Plaintiff's responses, which cite to proper evidence, dispute Defendant's facts detailed in their SMF, we shall not adopt Defendants' facts as our own.

As stated, Plaintiff filed a response to each and every paragraph of Defendants' SMF. (Doc. 20). However, as Defendant points out (Doc. 22 p. 2), some of Plaintiff's denial responses to their SMF are not proper under Local Rule 56.1, M.D. Pa., since he does not cite to evidence to support them.[7] We also agree with Defendant (*Id*.) that Plaintiff is incorrect with respect to his contention in several of his responses to Defendant's SMF (Doc. 20, *e.g.* ¶'s 20.-21., 24.-26., 30.-34.) that simply because Physician Assistant ("PA") Factora is not a licensed medical doctor, the Court is precluded from relying on any medical record he created. As Defendant states (Doc. 22 p. 2), it does not misrepresent the position Factora held with the medical staff as LSCI-Allenwood. (*See* Doc. 15, Ex. A, ¶ 11.). Further, Plaintiff cites to no support for his contention that the Court can only consider medical evidence in his prison medical records from a licensed physician in an FTCA action. Nor does Plaintiff challenge the authenticity of any of his medical records Defendant submitted. Since all of Plaintiff's medical records submitted by Defendant, including those authored by PA Factora, have been authenticated by Jim Potope, Assistant Health Services Administrator at USP-Allenwood (Doc. 15, Ex. A), they are properly considered by the Court as an

---

[7]Local Rule 56.1, M.D. Pa., provides in pertinent part that "[s]tatememts of material facts in support of, or in opposition to, a [summary judgment] motion **shall include references to the parts of the record that support the statements**." (Emphasis added). We note that Plaintiff was provided with the relevant Local Rules, MD. Pa., in the instant case. (Doc. 4).

exception to the hearsay rule under FRE 803(4). Thus, we will not consider any denials in Plaintiff's response to Defendant's SMF that are simply based on the fact that the medical records Defendant relied upon for the SMF were created by PA Factora.[8]

First, we consider the following SMF of Defendant which Plaintiff has admitted, either in whole or in part, with or without a caveat:[9] ¶'s 1.- 12.; ¶'s 14.-18.[10], ¶'s 20.-21.; ¶'s 23.-33.; ¶'s 35.-44.; ¶'s 46.-61.; ¶63.-67.; ¶ 69. (Plaintiff admits he requested more medication for neck pain, including only Robaxin, and states that he did not request Skelexa.)- 76.; ¶'s 78.-107.[11]; ¶'s 109.-

---

[8]We note that while Potope's authentication of Plaintiff's medical records submitted by Defendant has not been executed by Potope (Doc. 15, Ex. A, p. 16), Defendant should be permitted the opportunity to cure this oversight.

[9] We do not find Plaintiff's commentaries contained in some of his admitted responses to Defendant's SMF, such as what he perceives the inference Defendant seeks to draw from the SMF and who he perceives to be qualified to make entries in his BOP medical records, to properly dispute the substance of these SMF of Defendant. Also, as stated, the numerous denials or admissions with comments by Plaintiff regarding Defendant's SMF which are based in whole or in part on a medical record created by PA Factora due to the fact that Factora was not a licensed physician shall not be considered as proper denials. (*See also* Doc. 19, p. 4). Thus, we decline to agree with Plaintiff's contention that any of his BOP medical records Defendant submitted which were created by PA Factora should not be considered by the Court. Further, any of Defendant's SMF to which Plaintiff responds he lacks sufficient information to either admit or deny are accepted as undisputed since Defendant's cited evidence supports these SMF.

[10]Insofar as Plaintiff disagrees with Defendant's SMF ¶ 16. based only on the qualifications of Dr. Brady, we find that Dr. Brady was qualified to note his observation about Plaintiff's gait.

[11]Insofar as Plaintiff disagrees with Defendant's SMF ¶ 81. based only on his claim that no neurologist was present and on the fact the PA Factora administered the neuro-exam, we find that this SMF is supported by Defendant's evidence. (Doc. 15, Ex. A, ¶ 24. and Att. 1, p. 65). Further, Plaintiff offers no evidence, other than his contention, to support his claim that PA Factora was not qualified to conduct the February 14, 2007 neuro-exam on him, which was part of a general follow-up on him. We also note that Defendant has conveniently numbered

110.; ¶'s 112.-114.; ¶ 116.; ¶'s 118.-121.; ¶'s 123.-127.; ¶'s 130.; ¶'s 132.-137.; ¶'s 139.-142.; ¶'s 144.-152.; ¶'s 154.-156.; ¶ 158.; ¶ 161.; ¶163.; ¶'s 165.-167., ¶'s 169.-172.; ¶'s 175.-176.; ¶'s 178.-179.; ¶ 181.; ¶ 187.; ¶'s 189.-190.; ¶'s 194.[12]-199.; and ¶'s 201.-205.

Since the above listed paragraphs of Defendant's SMF, which we find to be undisputed are too numerous to restate herein, we incorporate by reference Defendant's Doc. 14 with respect to these paragraphs.

We now consider the paragraphs of Defendant's SMF which Plaintiff states he disputes. As mentioned, it was incumbent upon Plaintiff to cite to proper evidence in the record with respect to each of Defendant's paragraphs he disputes. Further, as stated repeatedly below, we find that Plaintiff's generic citation to "(please see: **Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence cited to in its exhibits.

Plaintiff disputes Defendant's SMF (Doc. 14, pp. 3-11) ¶'s 13., 16., 19., 22., 34., 45., 62., 68., 77., 81., 185. ,186., 188., and 191.-193. (Doc. 20). We find with respect to these stated paragraphs, Defendant's cited evidence clearly supports them. (Doc. 15, Ex. A and Att. 1). Further, as stated, Plaintiff's generic citation with respect to his disputed SMF, to "(please see: **Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff

_____

all of the numerous pages of Plaintiff's medical records it submitted. Doc. 15, Ex. A, Att. 1, pp. 1-542.

[12]Plaintiff adds that he was confined in a Halfway House in New Jersey on October 2, 2007, before he was released from BOP custody on November 30, 2007.

states shows that Factora was not licensed in Pennsylvania to practice medicine, as well as his Ex. 2, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Dr. Brady was licensed in Pennsylvania to practice medicine, are not sufficient to dispute Defendant's specific evidence cited to in its exhibits regarding the stated paragraphs. In fact, we do not accept any of Plaintiff's disputes to Defendant's SMF which he bases on his unsupported conclusions or upon a Pennsylvania Department of State computer printout which he contends shows that the BOP medical staff member was not qualified to make the note in his BOP medical records (*e.g.* Doc. 20, ¶ 62. and ¶ 81., ¶'s 185.-186., ¶'s 188., 191.-193.) which supports Defendant's SMF. Nor do we accept any of Plaintiff's numerous disputes with Defendant's SMF which are not properly supported by citation to relevant evidence in the record.

Plaintiff improperly disputes ¶ 108. of Defendant's SMF without citation to relevant evidence in the record. Defendant's evidence clearly supports this SMF. (Doc. 15, Ex. A, ¶ 27. and Att. 1, pp. 340-344). Further, Plaintiff repeatedly cites to his "Affirmation of the Pro-Se Plaintiff (P. Aff.) ¶." and to "(please see**: Id.**)" in many of his responses to Defendant's SMF. (Doc. 20, pp. 3-35). However, we find no Affirmation of Plaintiff attached to his Doc. 21 exhibits. Thus, Plaintiff's mere citation to "(please see**: Id.**)" is not sufficient to dispute Defendant's specific evidence, as it fails to point to any controverting evidence in the record.

While Plaintiff disputes ¶ 111. of Defendant 's SMF, Defendant's evidence clearly supports it. (Doc. 15, Ex. A, ¶ 28. and and Att. 1, p. 60). Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not

sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶ 115. of Defendant 's SMF, but Defendant's evidence clearly supports it. (Doc. 15, Ex. A, ¶ 30. and Att. 1, p. 60).  Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶ 117. of Defendant's SMF.  However, Defendant's evidence clearly supports it. (Doc. 15, Ex. A, ¶ 31. and Att. 1, p. 59).  Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶ 122. of Defendant's SMF.  However, Defendant's evidence clearly supports it. (Doc. 15, Ex. A, ¶ 32. and Att. 1, p. 58).  Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶'s 128. and 129. of Defendant 's SMF.  However, Defendant's evidence clearly supports these paragraphs. (Doc. 15, Ex. A, ¶ 34. and Att. 1, pp. 53-55).  Plaintiff's dispute based only on the qualifications of PA Factora and the fact that no neurologist was present for the May 4, 2007 exam does not create a genuine issue of material fact with respect to these paragraphs. The exam results reported by PA Factora in Plaintiff's official BOP medical records were obviously

based on Factora's observations. Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶ 131. of Defendant's SMF to the extent he claims that no "meeting ever took place on May 10, 2007. Defendant does not state a meeting took place. Also, Defendant's evidence clearly supports ¶ 131. (Doc. 15, Ex. A, ¶ 35. and Att. 1, p. 52). Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶ 138. of Defendant's SMF based only upon Dr. Pigos's qualifications. However, Defendant's evidence clearly supports it. (Doc. 15, Ex. A, ¶ 37. and Att. 1, p. 48). The May 16, 2007 exam results reported by Dr. Pigos, M.D., in Plaintiff's official BOP medical records were obviously based on Dr. Pigos's observations. Further, Plaintiff's citation to his Ex. 3, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Dr. Pigos was a physician and surgeon licensed in Pennsylvania, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶ 143. of Defendant's SMF based only of Dr. Pigos's qualifications. Defendant's evidence clearly supports it. (Doc. 15, Ex. A, ¶ 37. and Att. 1, p. 48). The May 16, 2007 exam results reported by Dr. Pigos, M.D., in Plaintiff's official BOP medical records, were obviously based on Dr. Pigos's observations. Further, Plaintiff's citation to his Ex. 3, Doc. 21, a

Pennsylvania Department of State computer printout which Plaintiff states shows that Dr. Pigos was a physician and surgeon licensed in Pennsylvania, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶ 153. of Defendant's SMF to the extent Defendant states that Plaintiff admitted to PA Factora on June 6, 2007 that he was not taking Tylenol with codeine because he said it was addictive. Plaintiff only states that he said he was reluctant to take medication that was addicting. Also, Defendant's evidence clearly supports ¶ 153. (Doc. 15, Ex. A, ¶ 40.). Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶ 157. of Defendant's SMF. However, Defendant's evidence clearly supports this paragraph. (Doc. 15, Ex. A, ¶ 40.). Plaintiff's dispute based only on the qualifications of PA Factora and the fact that no neurologist was present for the June 6, 2007 exam does not create a genuine issue of material fact with respect to this paragraph. The exam results reported by PA Factora in Plaintiff's official BOP medical records were obviously based on Factora's observations. Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶'s 159. and 160. of Defendant's SMF. However, Defendant's evidence clearly supports these paragraphs. (Doc. 15, Ex. A, ¶ 40. and Att. 1, pp. 41-46). The statements

reported by PA Factora in Plaintiff's official BOP medical records was plainly based on Factora's knowledge as to what he told Plaintiff about Tylenol and its side effects, and that he referred Plaintiff to the commissary to buy allergy tablets for his runny nose. (*Id.*, p. 42). Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence. Also, Plaintiff offers no evidence to support his claim that PA Factora misdiagnosed his bronchitis for an allergy.

Plaintiff disputes ¶ 162. of Defendant's SMF. Defendant's evidence clearly supports this paragraph. (Doc. 15, Ex. A, ¶ 40. and Att. 1, pp. 41-46). Plaintiff states that Dr. Brady did not personally examine him after February 22, 2007. The statements averred in ¶ 40. of Potope's Declaration are reported in Plaintiff's official BOP medical records. Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes ¶ 164. of Defendant's SMF. Defendant's evidence clearly supports ¶164. that Plaintiff indicated his pain was "0/10". (Doc. 15, Ex. A, ¶ 41. and Att. 1, p. 39). Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff only disputes ¶ 168. of Defendant's SMF to the extent Defendant states that Plaintiff's June 19, 2007 sick call visit was a requested visit. Plaintiff states that it was a follow-up

for misdiagnoses and medical malpractice of PA Factora from his June 6, 2007 visit. We find that Defendant's evidence clearly supports ¶ 168. (Doc. 15, Ex. A, ¶ 58. and Att. 2). We find that Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence.

Plaintiff states that he partially agrees and disagrees with ¶'s 173.-174 of Defendant's SMF, but he fails to cite to any relevant evidence in the record to dispute these paragraphs. Also, Defendant's evidence clearly supports ¶'s 173.-174. (Doc. 15, Ex. A, ¶ 44. and Att. 1, p. 34).

Plaintiff disputes ¶ 177. of Defendant's SMF. Defendant 's evidence clearly supports ¶ 177. that Plaintiff made no complaints of neck or back pain during his June 22, 2007 evaluation by medical staff. (Doc. 15, Ex. A, ¶ 44. and Att. 1, p. 34). Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence cited to in its exhibits.

Plaintiff disputes ¶ 180. of Defendant's SMF. Defendant's evidence clearly supports ¶ 180. that Plaintiff made no complaints of neck or back pain during his July 12, 13 and 17, 2007 evaluations by medical staff for bronchitis. (Doc. 15, Ex. A, ¶ 46. and Att. 1, pp. 30-32). Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence cited to in its exhibits.

Plaintiff disputes ¶ 182. of Defendant's SMF.  Defendant's evidence clearly supports ¶ 182. that Plaintiff made no complaints of neck or back pain during his July 19, 2007 evaluation by medical staff.   (Doc. 15, Ex. A, ¶ 47. and Att. 1, pp. 26-28).   Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence cited to in its exhibits.

Plaintiff disputes ¶ 184. of Defendant's SMF.  Defendant's evidence clearly supports ¶ 184. that Plaintiff was prescribed Ketorlac, an anti-inflammatory, during his July 27, 2007 evaluation by medical staff.  (Doc. 15, Ex. A, ¶ 47. and Att. 1, pp. 20-28).  Further, Plaintiff's generic citation to "(please see**: Id.**)" and to his Ex. 1, Doc. 21, a Pennsylvania Department of State computer printout which Plaintiff states shows that Factora was not licensed in Pennsylvania to practice medicine, is not sufficient to dispute Defendant's specific evidence cited to in its exhibits.

Plaintiff disputes ¶ 200. of Defendant's SMF without proper citation to evidence in the record to do so.  Defendant's evidence clearly supports it.  (Doc. 15, Ex. B, ¶ 6.).  Further, Plaintiff's generic citation to "(please see**: Id.**)" is not sufficient to dispute Defendant's specific evidence.

Plaintiff disputes  ¶'s 206. and 207. of Defendant's SMF without proper citation to evidence in the record to do so.  Defendant's evidence clearly supports them.  (Doc. 15, Ex. B, ¶ 10. and Ex. B, Att. 5).  Further, Plaintiff's generic citation to "(please see**: Id.**)" is not sufficient to dispute Defendant's specific evidence.  Plaintiff also cites to his Ex. 5, Doc. 21, Plaintiff's April 12, 2007 Inmate Request to Staff and Associate Warden's Response dated April 30, 2007 to Plaintiff's Inmate Request to Staff in which he requested a refund for alleged overcharges for his purchase of

Passover items sold in the Prison Commissary. We do not find Plaintiff's Ex. 5 disputes Defendant's stated evidence which supports ¶'s 206. and 207.

Thus, since we agree with Defendant (Doc. 22, p. 2) and fail to find any proper disputes of Plaintiff to any of Defendant's SMF, ¶'s 1.-207., Doc. 14, which are all properly supported by citation to evidence in the record (Doc. 15), we accept them entirely as uncontroverted for present purposes. *See Thomas*, 558 F. Supp. 2d at 558-59.

Therefore, we will accept all of the facts contained in Defendant's SMF that are supported by its evidence and that are not properly controverted by Plaintiff's responses and by his evidence, and we will adopt them as our own herein. *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the other party with sufficient citation to the record).[13]

## IV. Discussion.

The provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. 28 U.S.C. §2675 (a). Plaintiff here is seeking damages for personal injury against the United States for allegedly negligent treatment for his back conditions during his incarceration in federal prison, *i.e.* LSCI-Allenwood. As Plaintiff recognizes, with respect to Plaintiff's FTCA claim, the only proper party Defendant is the United States, and not individual employees of the BOP.

---

[13] *See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

*See* 28 U.S.C. §2679 (b) and (d)(1).

Plaintiff must file his FTCA action within six (6) months after the agency, here BOP, issued its final denial of his administrative tort claim (Form SF-95). *See* 28 U.S.C. § 2401(b); *Williams v. U.S.*, 1995 WL 739497, E.D. Pa. As Plaintiff points out (Doc. 19, p. 6), Defendant concedes that Plaintiff has exhausted the three claims he raises in this case, namely his medical malpractice claim, his claim that BOP falsified his medical records on June 19, 2007, which resulted in the improper charge and deduction of a $2.00 medical co-pay for Plaintiff's commissary account, and his claim that he was improperly overcharged $2.00 by the Prison Commissary for Passover items. (Doc. 13, p. 3, n. 4).

In *Banks,* the Third Circuit Court stated:

> The FTCA waives the sovereign immunity of the United States for torts of federal employees acting within the scope of their employment" under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The FTCA contains a jurisdictional bar that requires a plaintiff to file his or her claim with the appropriate federal agency and receive a final denial by that agency before filing a complaint in federal court. *See* 28 U.S.C. § 2675(a).

2007 WL 3096585, * 2.

1. *Claims regarding improper co-pay and overcharge for Passover items*

Defendant moves to dismiss under Rule 12(b)(1) Plaintiff's present claim that the BOP falsified his medical records on June 19, 2007, which resulted in the improper charge and deduction of a $2.00 medical co-pay from Plaintiff's commissary account, and his claim that he was improperly overcharged $2.00 by the Prison Commissary for Passover items. Defendant argues that

the United States did not waive sovereign immunity with respect to such claims. (Doc. 13, pp. 7-9). Defendant argues that the Court should grant its Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction Plaintiff's claims in this FTCA case that he was improperly charged fees by the BOP since the United States did not waive sovereign immunity for such claims. As stated and as Plaintiff initially argues (Doc. 19, p. 6), there is no dispute that Plaintiff filed tort claims (SF-95) with the BOP regarding his overcharge contentions and that he fully exhausted his administrative remedies. The Defendant again concedes exhaustion of the stated claims in its Reply Brief. (Doc. 22, p. 3). However, as Defendant points out, exhaustion is not the basis of its Rule 12(b)(1) Motion to Dismiss Plaintiff's overcharge claims. (*Id*.).

Defendant's Motion is based, in part, on Rule 12(b)(1) with respect to the stated overcharge claims of Plaintiff. The Court in *Henderson v. Nationwide Ins. Co.*, 169 F. Supp. 2d 365, 367-368 (E.D. Pa. 2001), stated:

> Fed.R.Civ.P. 12(b)(1) provides that a party may move to dismiss a lawsuit for lack of jurisdiction over the subject matter. A 12(b)(1) motion may challenge jurisdiction based on the face of the complaint or its existence in fact. *See Gould Elects. Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000) (*citing Mortensen v. First Fed. Savings and Loan Ass'n.,* 549 F.2d 884, 891 (3d Cir. 1977)). When the challenge is facial, the court must accept as true all well-pleaded allegations in the complaint and draw reasonable inferences in favor of the plaintiff. *See Mortensen*, 549 F.2d at 890. When the challenge to jurisdiction is factual, however, the court is not bound by the allegations in the pleadings. *See id.* Therefore, "no presumptive truthfulness attaches to plaintiff's allegations" for factual challenges. *Id*. Regardless of whether the challenge is facial or factual, the plaintiff bears the burden of persuasion. *See id.* Dismissal is proper where the federal claim is "made solely for the purpose of obtaining jurisdiction" or where such a claim is "wholly insubstantial and frivolous." *Kulick v. Pocono Downs Racing Ass'n, Inc.,* 816 F.2d 895, 898 (3d Cir. 1987) (citing *Bell v. Hood*, 327 U.S. 678, 682-83, 66 S.Ct. 773, 90 L.Ed.

939 ( 1946)).[14]

Here, we deem Defendant as making a factual challenge to jurisdiction since it relies upon the evidence it has submitted. (Doc. 13, pp. 8-9). Defendant cites to the case of *Ali v. Fed. Bureau of Prisons,* 128 S. Ct. 831 (2008)*,* in support of its contention that the Court lacks subject matter jurisdiction based on the doctrine of sovereign immunity regarding Plaintiff's claims that he was improperly charged a $2.00 medical co-pay and that he was overcharged $2.00 for Passover items, *i.e.* chocolate bars. (*Id*.). We agree with Defendant.

Very recently, the Third Circuit in *Ikelionwu v. Nash*, 2009 WL 1204558 (3d Cir.), considered a similar argument made by the government. In *Ikelionwu,* the inmate filed an FTCA action requesting damages against the BOP for misplaced personal property. The District Court dismissed the action under Rule 12(b)(1) for lack of subject matter jurisdiction based on the *Ali* case.

In *Ikelionwu*, the Third Circuit Court stated:

> The District Court dismissed Ikelionwu's complaint pursuant to Fed.R.Civ.P. 12(b)(1), reasoning that the doctrine of sovereign immunity bars Ikelionwu's claim under the FTCA. The FTCA provides a limited waiver of sovereign immunity, making the Federal Government liable to the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans,* 425 U.S. 807, 813 (1976). This waiver includes "claims ... for money damages ... for injury or loss of property ... caused by the negligent or wrongful act or omission of" a government employee. 28 U.S.C. § 1346(b)(1). However, an exception to the waiver of immunity applies to claims against "law enforcement officers" arising from the "detention of any goods, merchandise, or other property." 28 U.S.C. § 2680(c). BOP officials accused of misplacing prisoner property fall

---

[14]Defendant states the correct Rule 12(b)(1) standard in its brief. D0c. 13, p. 7.

within the ambit of § 2680(c). *See Ali,* 128 S.Ct. at 835. Accordingly, the District Court correctly concluded that it lacks subject matter jurisdiction based on the doctrine of sovereign immunity.

*Id.,* *1.

In *Gibson v. Sadowski*, 308 Fed. Appx. 580, 582 (3d Cir. 2009), the Court stated that "the United States Supreme Court [in *Ali*] has held that claims against corrections officers who are accused of mishandling an inmate's property fall with the FTCA's exception to the United States' waiver of sovereign immunity."(citing *Ali, supra*). We agree with Defendant and find that the FTCA exempts from the United States' waiver of sovereign immunity Plaintiff's present overcharge claims arising from the collection of money from him by BOP staff for Passover items and for a medical co-pay.

In his Brief, Plaintiff argues as follows with respect to his claim that he was overcharged $2.00 for the Passover items:

> The Defendant claims for the overcharge of the Kosher for Passover commissary purchase were within FBOP procedures governing commissary sales. However the Kosher for Passover commissary items were purchased through a Jewish organization known as the Aleph Institution located in Miami, Florida. Prior to Passover, the Aleph Institute mails to each known Jewish inmate in the United States a Kosher for Passover of items it sells for inmates to purchase through a procedure called a "Special Purchase Order" or "SPO." [FN1]. This order form from Aleph specifically instructed that if the prison facility was not allowing the inmates to use an "SPO" to order the Kosher for Passover items, that the commissary itself may purchase the items directly from the Aleph Institute *provided that they sold these Kosher for Passover items to the Jewish inmates at the same price offered using an "SPO".* This contractually mandated the commissary at LSCI-Allenwood to sell a Kosher for Passover chocolate bar for $1.25 and not for $1.65 as was done on the final day of Passover 2007.

21

FN1. LSCI-Allenwood utilizes"SPO's" for inmates to purchase art supplies when enrolled in certain programs through the recreation department.

(Doc. 19, pp. 6-7).[15]

Plaintiff argues as follows with respect to his claim that he was overcharged $2.00 for a co-pay on his June 19, 2007 medical visit:

On June 19th, 2007, unlicensed medical practitioner Vicarthur Factora falsified the Pro-Se Plaintiff's FBOP medical records causing t he Pro-Se Plaintiff to be charged a $2.00 co-pay. Aside from the fact that this was not a separate visit to health services wherein a co-pay might be authorized (this was a follow-up to the June 6th, 2007 visit where developing bronchitis was misdiagnosed by the unlicensed Vicarthur Factora), the very fact that these medical records are created by an unlicensed person attempting to practice medicine opens a Pandora's box of troubles should the Honorable Court rely on them as being even semi-accurate.

(*Id.*, p. 7).

Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's stated overcharge claims since they are barred by the detention of goods exception to the FTCA, pursuant to 28 U.S.C. § 2860(c). Defendant argues that Plaintiff's FTCA action should be dismissed with respect to his stated overcharge claims for lack of jurisdiction. Defendant's argument is based on Rule 12(b)(1). While Plaintiff tries to distinguish *Ali* from his case (Doc. 19, p. 8), we agree with Defendant (Doc. 22, p. 3) and find that Plaintiff's argument is not persuasive, particularly in light of *Ikelionwu*.

---

[15]Since Plaintiff bought five chocolate bars and he claims the prison commissary overcharged him $.40 per bar, his total claim is for $2.00.

Based on *Ali*, *Gibson* and *Ikelionwu*, we agree with Defendant and shall recommend that Plaintiff's claims that he was improperly charged a $2.00 medical co-pay and that he was overcharged $2.00 for Passover items be dismissed pursuant to Rule 12(b)(1).[16]

*2. Medical Malpractice Claim*

The Court in *Wooding v. U.S.*, 2007 WL 951494, * 3 (W.D. Pa. 2007), stated:

> To prevail on this medical malpractice claim [under the FTCA], Wooding must establish: (1) a duty owed by the physician; (2) a breach of that duty; (3) that the breach proximately caused the harm; and (4) that the damages directly result from the harm. *Quinby v. Plumstead Family Practice, Inc.,* 589 Pa. 183, 907 A.2d 1061, 1070 (2006), *quoting, Hightower-Warren v. Silk,* 548 Pa. 459, 698 A.2d 52, 54 (1997). In addition, "as a general rule, a plaintiff has the burden of presenting expert opinions that the alleged act or omission of the defendant physician or hospital personnel fell below the appropriate standard of care in the community, and that the negligent conduct caused the injuries for which recovery is sought." *Simpson v. Federal Bureau of Prisons,* Civ. No. 2-2313, 2005 WL 2387631 at * 5 (Sept. 28, 2005), *citing, Grossman v. Barke,* 868 A.2d 561, 566-67 (Pa.Super. 2005). "Expert testimony, however, is not required when a matter 'is so simple or the lack of skill or care is so obvious as to be within the range of experience and comprehension of even non-professional persons.' " *Simpson,* 2005 WL 2387631 at * 5, *quoting, Hightower-Warren v. Silk,* 548 Pa. 459, 698 A.2d 52, 54 n. 1 (Pa.1997).
>
> The Pennsylvania Supreme Court's cautionary language in *Toogood v. Rogal,* 573 Pa. 245, 824 A.2 1140, 1149 (2003), confirms the narrowness of the exception to the requirement of expert testimony:

---

[16]Even if Plaintiff's claims that he was improperly charged a $2.00 medical co-pay and that he was overcharged $2.00 for Passover items were not subject to dismissal pursuant to Rule 12(b)(1), we agree with Defendant (Doc. 22, p. 3) that the undisputed facts concerning these claims stated in its SMF, supported by its evidence, demonstrate that Plaintiff was properly charged a $2.00 medical co-pay based on BOP regulations and policy, and that Plaintiff was not overcharged for the Passover items. (Doc. 14, ¶168. and ¶'s 195.-207.). As discussed above, we note that we have adopted all of Defendant's SMF.

> Courts sitting in medical malpractice cases require detailed
> expert testimony because a jury of laypersons generally lacks
> the knowledge to determine the factual issues of medical
> causation; the degree of skill, knowledge, and experience
> required of the physician; and the breach of the medical standard
> of care. In contrast, plaintiffs in res ipsa loquitur cases rely on
> the jury to fill in the missing pieces of causation and negligence,
> inherent in their cases, with the jury's common experience.
> Determining whether there was a breach of duty, however,
> involves a two-step process: the court must first determine
> the standard of care; it then must examine whether the
> defendant's conduct measured up to that standard. Not only
> does the plaintiff have the burden of proving that the
> defendant did not possess and employ the required skill and
> knowledge, or did not exercise the care and judgment of
> a reasonable professional, he or she must also prove that
> the injury was caused by the failure to employ that
> requisite skill and knowledge. We have previously concluded
> that this must be accomplished with expert medical testimony
> presented at trial by doctors testifying as expert witnesses.[17]

*See also Thomas, supra*.

The Court in *Wooding v. U.S.* noted, "Wooding's claim is actually brought under the Federal Tort Claims Act (FTCA)". The FTCA constitutes a waiver of sovereign immunity in certain situations. The substantive state law where the tortious conduct occurs governs a FTCA claim.  *See Sosa v. Alvarez-Machain,* 542 U.S. 692, 700 (2000). Because the operation occurred in Pennsylvania, Pennsylvania law applies."  2007 WL 951494, * 3, n. 6 (W.D. Pa.).[18]  Thus, Pennsylvania law applies in the instant case since Plaintiff Sash's alleged negligent medical treatment all occurred in

---

[17]Defendant also correctly recognizes the elements of a medical malpractice claim under Pennsylvania law. Doc. 13, p. 11.  Defendant further is cognizant of the need for Plaintiff to proffer expert medical testimony to support his FTCA claim.  (*Id.*).

[18]Defendant also correctly recognizes that Pennsylvania law applies in this FTCA action. Doc. 13, pp. 10-11.

Pennsylvania while he was confined at LSCI-Allenwood.

In his Complaint, Plaintiff alleged, in part, that the government was negligent due to the conduct of Dr. Brady at LSCI-Allenwood and his failure to allow Plaintiff to be examined by medical specialists, namely, an orthopedic surgeon, a neurologist and a neuro-surgeon, for his back conditions, and that Dr. Brady failed to allow Plaintiff to have any diagnostic tests for his back pain, such as an MRI and an EMG. (Doc. 1, pp. 13-14). Further, Plaintiff alleged that the prison's medical staff, under direction of Dr. Brady, was negligent since they failed to allow him to receive specialized treatments, including physical therapy, chiropractic adjustment, and epidural injections, despite his need for these treatments which he averred was supported by his BOP medical records.

Plaintiff alleged that Mr. Potope, Assistant HSA, was negligent for not responding to a letter from Plaintiff's criminal case attorney about his back conditions for six (6) days. (*Id.*, p. 14). Plaintiff averred that PA Factora falsified his medical records regarding his December 18, 2006 medical visit for rectal bleeding by indicating that Plaintiff's "pain assessment was 0/0." (*Id.*, p. 15). Plaintiff alleged that during the time he was confined at LSCI-Allenwood, he reported numerous times to the health services for back pain, and that the medical staff repeatedly failed to schedule him for evaluations by specialists and failed to order any medical diagnostic tests, notwithstanding the fact that he was placed on medical work restrictions and medical work idle status during most of his confinement at LSCI-Allenwood. Plaintiff states that prison medical staff were motivated by monetary concerns in refusing to order diagnostic tests for him and in refusing to allow him to be evaluated by specialists, and that their decisions were not based on medical opinions. Plaintiff stated that the medical staff at LSCI-Allenwood were not qualified to treat and assess his back

conditions, including PA Factora.  (*Id*.).

Plaintiff averred that the prison medical staff continued to give him anti-depressants that did not relieve his back pain, and that in February 2007, staff only told him to buy Tylenol, and refused to give him the one medication he claimed worked for him, namely Robaxin.  (*Id*., pp. 15-16). Thus, Plaintiff alleged that prison staff negligently failed to give him proper medications for his conditions and pain.  Plaintiff stated that nothing prison medical staff did for him and prescribed for him ever relieved his pain.  (*Id*., pp. 16-19).

Plaintiff alleged that while he was examined numerous time over his final seven months at LSCI-Allenwood by PA Factora, Factora failed to address his constant back and neck pain, and that Dr. Brady refused to see him during this time period.  (*Id*.).

Defendant's undisputed evidence shows that Plaintiff received quite extensive care for his back conditions during his confinement at LSCI-Allenwood.   (Doc. 15, Ex. A, Att. 1, pp. 1-542). Plaintiff seems to concede  that he was seen numerous times by the prison medical staff, but he argues that this does not "translate[] into proper medical care and treatment."  (Doc. 19, p. 8). Plaintiff also argues as follows:

> The Defendant deliberately refused to request the necessary medical tests that would have properly diagnosed the Pro-Se Plaintiff's serious medical conditions, and that would have mandated a specific course of treatment ("non-formulary"medications, epidural injections and possibly spinal fusion surgery) (please see: ***Opposing Statement of Material Facts ¶¶ 1-194).***

(*Id*., pp. 8-9).

As stated above, we agree with Defendant that the undisputed facts stated in its SMF, Doc. 14, which are all supported by references to its evidence (Doc. 15), show that Plaintiff has

failed to establish the required elements of his medical negligence claim, *i.e.* the BOP breached a duty owed to him to provide him with proper medical care for his back conditions (cervical stenosis and lumbar stenosis), bronchitis, and other ailments, and that the alleged conduct of the BOP medical staff at LSCI-Allenwood proximately caused Plaintiff's alleged injuries of a deterioration of his back conditions, cervical stenosis and lumbar stenosis.

Defendant concedes that it owed a duty to provide adequate medical care to Plaintiff. (Doc. 13, p. 12). However, Defendant argues that it did not breach its duty owed to Plaintiff.

We agree with Defendant and find that Plaintiff has not established that Defendant breached its duty of care owed to him based on the undisputed evidence submitted by Defendant. (Doc. 15). The evidence shows that prison medical staff treated Plaintiff numerous times for his serious back conditions as well as his other ailments. The numerous medical records of Plaintiff while he was confined at LSCI-Allenwood for less than one year, *i.e.* for about 10 months, from December 6, 2006 to October 2, 2007, show that Plaintiff received quite extensive medical care, on a continuous basis, for his numerous medical conditions, including his serious back conditions. (Doc. 15, Ex. A, Att. 1, pp. 1-542).[19] There are 542 pages of medical records detailing the constant care that Plaintiff received at LSCI-Allenwood for his numerous ailments, especially for his back conditions. (*Id*.).

Plaintiff points to his October 22, 2007 MRI of his lumbar spine, performed while he was in the Halfway House, which revealed as follows:

_____

[19]As Plaintiff states, he was transferred from LSCI-Allenwood to a BOP Halfway House on October 2, 2007. (*See* Doc. 20, p. 33, ¶ 194.).

Findings:        Sagittal view demonstrates normal conus.  Extradural
defects noted on the theca sac slightly predominantly L5/SA and
L4/L5, dip or bony hemangiomas with no defects on the thecal sac.
No disk herniation or stenosis at L1/L2.
Axial views at L2/L3 demonstrate no disk herniation or stenosis.
L3/L4 demonstrates no disk herniation or stenosis.
L4/L5 reveals mild diffuse disk herniation at the slight encroachment
into the foramen bilaterally
L5/S1 reveals slight diffuse bulging disk.

Conclusion: Mild diffuse disk herniation L4/L5 with slight encroachment
into the foramen.

(Doc. 21, Ex. 9, at p. 1).

Plaintiff also had an MRI of his cervical spine on October 22, 2007, which revealed as

follows:

Findings:        On the sagittal view spinal cord demonstrate no cord
compression.
The disc spaces reveal narrowing slightly predominantly C-4 through C6/7.
Axial views reveal C3/C4: Mild diffuse osteophyte.
C4/C5: Mild osteophyte.
C5/C6: Diffuse osteophyte with encroachment into the foramen
bilaterally more on the right.
C6/C7: Focal disk herniation predominantly midline and slightly
more to the left.
C7/T1: No significant defects on the theca sac.
These findings was (sic) noted on the previous examination on the report.

Conclusion: Diffuse osteoophyte at C5/C6 more on the right, focal
disk herniation at C6 and C7 on the left, no cord compression.

(Doc. 21, Ex. 9, at p. 2).

Plaintiff contends that this objective medical evidence, after his release from LSCI-Allenwood

into a Halfway House, shows that the treatment he received from the prison medical staff worsened

his back conditions and amounted to negligence.  We do not find that Plaintiff's October 22, 2007

MRI's show that the BOP breached a duty owed to Plaintiff to provide him with proper medical care for his back conditions (cervical stenosis and lumbar stenosis) and that the alleged conduct of the BOP medical staff at LSCI-Allenwood proximately caused Plaintiff's alleged injuries of a deterioration of his conditions, cervical stenosis and lumbar stenosis. Further, as Defendant points out, Plaintiff fails to offer any expert witness testimony to show that the care he was provided at LSCI-Allenwood caused a deterioration of his back conditions.

Plaintiff also points to the March 24, 2009 report of Dr. Alweiss, a board certified neurologist (Doc. 21, Ex. 7), in which the doctor wrote:

> I ultimately performed an NCV/EMG study on him [Plaintiff] on 10/30/07. It revealed findings suggestive of a cervical radiculopathy.
>
> He subsequently underwent cervical epidural steroid injections. These were performed in December 2007 and January 2008 by Mr. Steven Walkman, M.D. and were reportedly successful in significantly reducing Mr. Sash's pain.
>
> I performed lumbar epidural injections on him in January and in February 2008, and these were moderately successful in reducing Mr. Sash's pain.
>
> I have been asked by Mr. Sash to comment on various issues:
>
> In my opinion, it would have been reasonable for Mr. Sash to have continued care with an orthopedist or a neurologist for his condition, given that he was already being actively treated within both of these specialties.

(Doc. 21, Ex. 8, at pp. 1-2).

The opinion of Dr. Alweiss that it would have been reasonable for Plaintiff to have continued care with either an orthopedist or a neurologist for his back condition, does not meet the required standard for an expert witness to state, to a reasonable degree of medical certain, that the medical

care Plaintiff received at LSCI-Allenwood fell below the accepted standard of care in the relevant community. We agree with Defendant (Doc. 22, pp. 4-5) that Plaintiff has failed to meet his burden of establishing a medical malpractice claim and that he should not be allowed to proceed to trial in this case since he has not proffered an expert medical witness to support his claim.

In *Keller v. Feasterville Family Health Care Center,* 557 F. Supp. 2d 671, 675 (E.D. Pa.), the Court stated:

> "an experts's testimony is admissible so long as the process or technique used in formulating the opinion is reliable," *Pineda,* 520 F.3d at 247 (citing *Paoli II,* 35 F.3d at 742), and the expert's principles and methods are reliably applied to the facts of the case, Fed.R.Evid. 702 (advisory committee notes). The "expert's opinions must be based on the methods and procedures of science, rather than on subjective belief or unsupported speculation." *Paoli II,* 35 F.3d at 742 (citations and internal quotations omitted). Thus, "the expert must have 'good grounds' for his or her belief." *Id.* (quoting *Daubert,* 509 U.S. at 590, 113 S.Ct. 2786).

"In addition to the 'good grounds' requirement, in a diversity case such as this, state rules on the degree of certainty required of an expert's opinion apply. In Pennsylvania, a doctor can [offer] an opinion [only] if he or she can do so with a reasonable degree of medical certainty. *Heller,* 167 F.3d at 153 n. 4 (citing *Paoli II,* 35 F.3d at 750-52)." *Id.* at 676.[20]

Plaintiff offers no medical expert who renders an opinion that the BOP breached its duty of care owed to him and that such breach proximately caused him to suffer harm and his back conditions to worsen. We agree with Defendant that Dr. Alweiss's March 24, 2009 letter, quoted in pertinent part above, is clearly not sufficient to constitute expert medical testimony to support

---

[20]We note that while the present case is an FTCA action, and not a diversity case, the federal court still must apply Pennsylvania substantive law. *See Perez v. Griffin*, 2008 WL 2383072 (M.D. Pa.), *aff'd.* 2008 WL 5351829 (3d Cir. 2008).

Plaintiff's FTCA claim.

Defendant's SMF (Doc. 14) and Doc. 15, Ex. A, summarize the extensive medical care Plaintiff received for his back conditions, which care is not disputed, and is supported by Defendant's evidence referenced therein.

Plaintiff initially complained of some pain in his neck and lower back to Dr. Brady on December 12, 2006, shortly after his arrival at LSCI-Allenwood. The record reveals that:

> It was noted at the time that Sash complained of "some pain" without radiation in his neck and lower back. It was also noted that he was walking without difficulty and that there was "no deficit" from his spinal stenosis. Dr. Brady re-prescribed all of Sash's medications, with the exception of the Naproxen: Sash's elevated creatinine [FN1] level, which could worsen with anti-inflammatory treatments. In addition, Sash was prescribed Capsaicin cream to treat his neck and back discomfort, and he was given a lower bunk pass. A cardiology consultation was ordered. *Id.* [Doc. 15, Ex. A, Att. 1] at 82-83.

> FN1    Creatinine is a breakdown product of creatine, which is an important part of muscle. It is also found in blood and urine. MERRIAM WEBSTER'S MEDICAL DESK DICTIONARY 150 (1st Ed. 1993).

(Doc. 15, Ex. A, ¶ 8.).

Subsequently, the evidence shows that Plaintiff merely disagreed with the conservative medical care which the prison medical staff provided for his back conditions, namely, Plaintiff wanted an MRI and EMG, a neurosurgeon referral and epidural injections, and the prison medical staff did not find them necessary. Plaintiff argues that the failure of the BOP to provide the care he wanted amounted to negligence and medical malpractice, and that the medical staff's refusal to refer him to specialists amounted to improper treatment for his back conditions. Plaintiff believed that an MRI, a neurosurgeon referral, and EMG, and an epidural injection were medically

necessary, and he disagreed with the BOP medical staff's findings that they were not. Plaintiff's case amounts to his mere disagreement with the opinions of the prison medical staff, which found that he did not require an MRI, a neurosurgeon referral, an EMG and epidural injections. (Doc. 15, Ex. A, ¶'s 21.-23.). Such disagreement of Plaintiff with the opinions of the BOP medical staff do not show that the BOP breached its duty of care owed to him. Indeed, Plaintiff was given a neuro-exam by PA Factora. Factora found that the results were normal, that Plaintiff's movements and sensations to his extremities were intact, and that his gait was steady. Factora reported that Plaintiff stated his pain was 4/10. Plaintiff simply claims that Factora was not qualified to give him such an exam since Factora was not a licensed doctor. This does not amount to negligence or medical malpractice. The record also shows that Plaintiff was also treated by Dr. Brady and that his treatment was discussed with Dr. Brady. (Doc. 15, Ex. A, ¶'s 8., 21., 25., 26., 35., 39., 40., and 51.). Thus, since Dr. Alweiss, Plaintiff's treating neurologist prior to his incarceration, and Dr. Waldman, a neurologist who administered three cervical epidural injections in Plaintiff after his incarceration, have not submitted any report in which they state that Plaintiff did not receive the required level of care medically acceptable in the community during his confinement at LSCI-Allenwood, and that this lack of care proximately, to a reasonable degree of medical certainty, caused Plaintiff's alleged injuries, Plaintiff cannot sustain his medical malpractice claim under the FTCA against the United States.

Therefore, we will recommend that Defendant's Summary Judgment Motion be granted with respect to Plaintiff's medical malpractice claim against the United States.

## V. Recommendation.

Based on the foregoing, it is respectfully recommended that Defendant's Summary Judgment Motion **(Doc. 11)** be granted with respect to Plaintiff's medical malpractice claim under the FTCA against the United States. It is further recommended that judgment be entered in favor of Defendant United States and against Plaintiff Sash regarding Plaintiff's medical malpractice claim. Additionally, it is recommended that Defendant's Doc. 11 Motion to Dismiss pursuant to Rule 12(b)(1), be granted with respect to Plaintiff's claims that he was improperly charged a $2.00 medical co-pay and that he was overcharged $2.00 for Passover items. Finally, it is recommended that the Court close this case.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: June 11 2009**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ELIOT S. SASH,                    :        CIVIL ACTION NO. **1:CV-08-1553**
                                  :
            Plaintiff             :        (Judge Rambo)
                                  :
            v.                    :        (Magistrate Judge Blewitt)
                                  :
UNITED STATES,                    :
                                  :
            Defendant             :

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **June 11, 2009.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within ten (10)
> days after being served with a copy thereof. Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections. The briefing
> requirements set forth in Local Rule 72.2 shall apply. A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge. The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                 **s/ Thomas M. Blewitt**

_____  **THOMAS M. BLEWITT**
                                                 **United States Magistrate Judge**


**Dated: June 11, 2009**